**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-20393
(Summary Calendar)
_____


UNITED STATES OF AMERICA,


                         Plaintiff-Appellee,

versus


GEORGE W ROBINSON,


                         Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-94-121-4)
_____


February 4, 1997
Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Plaintiff George W. Robinson appeals his conviction of and sentence for conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841 and 846.  We affirm.

                               I

     The government named Robinson in counts one and fourteen of a

_____

          [*]     Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

fifteen-count second superseding indictment charging fourteen people with drug conspiracy (count one), conspiracy to launder drug proceeds (count fourteen), and various substantive drug offenses. Robinson signed a plea agreement on January 30, 1995, in which he agreed to plead guilty to count one in exchange for the dismissal of count fourteen. The plea agreement stated that it was an agreement pursuant to United States Sentencing Commission, *Guidelines Manual*, § 5K1.1 (1995) [hereinafter USSG], which would require the government to move for a downward departure if, in the United States Attorney's opinion, Robinson rendered substantial assistance to the government. The agreement extensively defined substantial assistance by Robinson and retained the government's sole discretion in making a § 5K1.1 motion.

On May 27, 1995, subsequent to Robinson's conviction in this case and while Robinson was on bond, law enforcement officers stopped a vehicle driven by Robinson and confiscated approximately $16,000 in cash upon which a drug-detection dog alerted. Also while on bond, Robinson sold crack cocaine to an undercover narcotics agent on June 13, 1995. On August 9, 1995, Robinson was arrested in connection with the June 13 drug transaction. The Pre-Sentence Report ("PSR") prepared for the instant case reflected these events.

In his objections to the PSR, Robinson claimed that the government breached the plea agreement by failing to move for a

downward departure based on Robinson's substantial assistance.  He also objected to a two-level adjustment to his offense level for his leadership role in the count of conviction.

After once postponing sentencing to permit the government to respond to Robinson's claim of breach of the plea agreement, the district court took testimony from government prosecutors regarding whether Robinson had been given an opportunity to provide assistance.  Assistant United States Attorney Kenneth Dies testified that he met with Robinson and his counsel in January 1995 to determine whether Robinson possessed information that could be helpful to the government.[2]  Assistant United States Attorney Martha Vara testified that she met with Robinson and counsel in February 1995 to discuss any information Robinson might possess and that she made numerous efforts to reach Robinson by telephone at his home and through his attorney.  She also testified that she obtained Robinson's telephone number from him in order to reach him later after unexpectedly meeting him of the Houston courthouse in mid-March 1995.

Dies testified that he did not call Robinson as a witness in a related prosecution because he had adequate testimony from three other witnesses that did not require additional corroboration. After learning of Robinson's August 1995 arrest and the allegations

---

[2]        This meeting occurred prior to the signing of the plea agreement. Dies testified that the purpose of this meeting was for the government to evaluate whether the § 5K1.1 provision should be included in the plea agreement.

of Robinson's ongoing drug trafficking, Dies did not contact Robinson again because, in Dies' opinion, Robinson had no credibility and his cooperation could not be helpful to the government.

The district court found that the government had made efforts to contact Robinson; that government prosecutors had interviewed Robinson to determine his value to a related prosecution; that the prosecutors had decided, in their discretion, that Robinson's testimony would not be of "additional value" to the government; and that Robinson's August 1995 arrest and the subsequent drug charges against Robinson "create[d] a change in circumstances" that supported the government's discretionary judgment to view Robinson as unable to provide substantial assistance. Thus, the district court denied Robinson's requests for specific performance of the § 5K1.1 provision of the plea agreement and for withdrawal of his guilty plea.

The district court also denied Robinson's objection to the PSR regarding his leadership role in the offense. The court sentenced Robinson within the applicable guideline range to 210 months of imprisonment.

II

Robinson first argues that the government breached the plea agreement by failing to make a § 5K1.1 motion for a downward departure. Whether the government's actions have breached the

terms of a plea agreement is a question of law we review *de novo*. *United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996). The proper inquiry is whether the government's conduct comports with the parties' reasonable understanding of the agreement. *Id.* The defendant bears the burden of demonstrating the underlying facts that establish the breach by a preponderance of the evidence. *Id.* Where, as here, the plea agreement expressly states that the government retains "sole discretion" over the decision whether to make a § 5K1.1. motion, we have held that a refusal to do so is reviewable only for unconstitutional motive. *Id.* at 368.

Robinson concedes that the government retained discretion to determine whether a § 5K1.1 motion was warranted, but he argues that the plea agreement was illusory because the government never gave him an opportunity to provide assistance. This claim lacks merit, however, because the government gave Robinson an opportunity to provide assistance by interviewing him and evaluating whether his testimony could be helpful in a related prosecution. Moreover, Robinson's drug trafficking, carried on subsequent to his acceptance of the plea agreement, supports the government's discretionary decision that Robinson could not provide substantial assistance deserving of a § 5K1.1 motion. Robinson does not contend that the government's refusal to move for a § 5K1.1 departure was based upon an unconstitutional motive. Therefore, we find that the government did not breach the plea agreement. *Price*,

95 F.3d at 368.

Robinson next argues that the district court erred in adjusting his offense level by two for his role as a leader in the offense. We review for clear error a district court's factual finding that a defendant was a leader/organizer pursuant to USSG § 3B1.1. *United States v. Ayala*, 47 F.3d 688, 689-90 (5th Cir. 1995). Factual findings are not clearly erroneous if they are plausible in light of the record read as a whole. *Id.* at 690.

Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing. *Id.* The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely upon the PSR and adopt it. *Id.* The court is free to disregard a defendant's unsworn assertions that the PSR is unreliable. *Id.*

Here, the district court relied on the PSR that described Robinson's crack-distribution organization to find that Robinson deserved a two-level upward adjustment for his leadership role in the offense. The information in the PSR is based upon police reports detailing undercover crack purchases from Robinson or his associates, who were named in the reports. Robinson contends that this information was insufficient to warrant a two-level increase for leadership role because it is based on an unsworn police report and is silent as to activities of Robinson's underlings in the

organization.  Robinson has not, however, demonstrated that the PSR is inaccurate; the district court had no obligation to credit Robinson's unsworn assertions that the PSR was unreliable.

AFFIRMED.